J-S45001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: H.D.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.G., MOTHER | : | No. 938 EDA 2017 |

Appeal from the Order Dated February 2, 2017
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2016-A0182

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.H.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.G., MOTHER | : | No. 939 EDA 2017 |

Appeal from the Order Dated February 2, 2017
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2016-A0183

| | | |
|---|---|---|
| IN RE: ADOPTION OF: K.N.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.G., MOTHER | : | No. 940 EDA 2017 |

Appeal from the Order Dated February 2, 2017
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2016-A0184

| | | |
|---|---|---|
| IN RE: ADOPTION OF: O.R.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.G., MOTHER | : | No. 941 EDA 2017 |

J-S45001-17

Appeal from the Order Dated February 2, 2017
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s):  2016-A0185

BEFORE:  GANTMAN, P.J., PANELLA, J., and STRASSBURGER, J.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JULY 24, 2017**

Appellant, C.G. ("Mother"), appeals from the orders entered in the Montgomery County Court of Common Pleas, Orphans' Court, which changed the family goal to adoption and granted the petitions of the Office of Children and Youth ("OCY") for involuntary termination of Mother's parental rights to her minor children, K.N.L., O.R.L., A.H.L., and H.D.L. ("Children").[1]  We affirm.

The relevant facts and procedural history of this case are as follows. Mother and Father are the parents of K.N.L. (born September 2004), O.R.L. (born April 2008), A.H.L. (born January 2010), and H.D.L. (born October 2013).  The family has been involved with OCY since 2011, and OCY removed Children from parents' care on several occasions prior to October 30, 2015.  On October 30, 2015, Children were removed from parents' care due to Mother's arrest on an outstanding warrant, the uninhabitable conditions of the home, and the discovery of a woman, hiding in one of

_____
[1] The court also terminated the parental rights of J.L. ("Father"), who is not a party to this appeal.
_____

*Retired Senior Judge assigned to the Superior Court.

- 2 -

Children's bedrooms, overdosing on illegal drugs. OCY obtained emergency legal and physical custody of Children, and on November 10, 2015, the court adjudicated Children dependent. Children were placed together in a pre-adoptive foster home.

Parents continually failed to complete FSP goals, which included complying with probation, obtaining drug and alcohol treatment, maintaining sobriety, and finding suitable housing. As a result, OCY filed petitions for involuntary termination of parental rights on or about November 14, 2016. The court held a termination hearing over two days on February 1 and 2, 2017. At the conclusion of the hearing, the court granted the petitions for involuntary termination of parents' parental rights to Children. On March 1, 2017, Mother timely filed notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). This Court consolidated the appeals *sua sponte* on April 5, 2017.

Mother raises six issues for our review:

> DID THE TRIAL COURT ERR IN FINDING THAT THE COMMONWEALTH MET ITS BURDEN BY CLEAR AND CONVINCING EVIDENCE THAT [MOTHER] VIOLATED 23 PA.C.S. § 2511(A)(2) AND 23 PA.C.S. § 2511(A)(8)?
>
> DID THE TRIAL COURT ERR WHEN IT FOUND THAT, AS IT PERTAINS TO [MOTHER], THE CONDITIONS WHICH LED TO THE REMOVAL OR THE PLACEMENT OF [CHILDREN] CONTINUE TO EXIST PURSUANT TO 23 PA.C.S. § 2511(A)(8)?
>
> DID THE TRIAL COURT ERR IN FINDING THAT THE LACK OF A PARENTAL BOND WITH MOTHER IS SUPPORTED, AND NOT CONTRADICTED, BY THE EVIDENCE?

DID THE TRIAL COURT [ERR] APPLYING THE **FRYE** STANDARD AND FAILED TO CONDUCT A PROCEDURALLY CORRECT **FRYE** HEARING.

DID THE TRIAL [COURT ERR] WHEN IT FOUND THAT THE DEVELOPMENTAL, PHYSICAL, EMOTIONAL NEEDS AND WELFARE OF THE MINOR [CHILDREN] WERE BEST SERVED BY SEVERING THE PARENTAL BOND WITH [MOTHER?]

DID THE TRIAL COURT ERR WHEN IT FOUND THAT THE CONDITIONS AND CAUSES WHICH LED TO THE REMOVAL OF THE MINOR [CHILDREN] CONTINUE TO EXIST AND THAT [MOTHER] CAN OR WILL NOT REMEDY THE CONDITIONS WITHIN A REASONABLE PERIOD OF TIME, PURSUANT TO 23 PA.C.S. § 2511(A)(2).

(Mother's Brief at 4-5).[2]

Appellate review of termination of parental rights cases implicates the following principles:

In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

**In re Z.P.**, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting **In re I.J.**, 972 A.2d 5, 8 (Pa.Super. 2009)).

Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's

---

[2] Mother included the **Frye** hearing issue in her statement of questions involved, but she did not pursue any argument on this claim. Therefore, we deem the issue waived. **See Butler v. Illes**, 747 A.2d 943 (Pa.Super. 2000) (holding appellant waived claim where appellant failed to set forth adequate argument concerning claim on appeal).

- 5 -

decision is supported by competent evidence.

*In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).

Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

*In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191-92 (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

OCY filed petitions for the involuntary termination of Mother's parental rights to Children on the following grounds:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (8), and (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra* at 1117.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of …her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340. The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998). Incarceration is also relevant in

termination decisions under Section 2511(a)(2) and can be a determinative factor "in a court's conclusion that grounds for termination exist under [Section] 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied." **In re Adoption of S.P.**, 616 Pa. 309, 329, 47 A.3d 817, 828 (2012). "If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to [Section] 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest." **Id.** at 332, 47 A.3d at 830-31.

"[T]o terminate parental rights under Section 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from parental care for [twelve] months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." **In re Adoption of M.E.P.**, 825 A.2d 1266, 1275-76 (Pa.Super. 2003). "Section 2511(a)(8) sets a 12–month time frame for a parent to remedy the conditions that led to the children's removal by the

court." ***In re A.R.,*** 837 A.2d 560, 564 (Pa.Super. 2003). Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of Agency services. ***In re Adoption of T.B.B.,*** 835 A.2d 387, 396 (Pa.Super. 2003); ***In re Adoption of M.E.P., supra****.*

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. ***In re C.P.****,* 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." ***Id.*** Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

***In re Z.P., supra*** at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements

within a reasonable time following intervention by the state, may properly be considered unfit and have …her rights terminated." ***In re B.L.L.***, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert [herself] to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of…her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

***In re B.,N.M.***, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of …her child is converted, upon the failure to fulfill…her parental duties, to the child's right to have

proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Cheryl L. Austin, we conclude Mother's issues merit no relief. The Orphans' Court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Orphans' Court Opinion, dated March 16, 2017, relying on and attaching its reasoning set forth on record at termination hearing, N.T. Hearing, 2/2/17, at 129-50) (finding: under Section 2511(a)(8), Children have been removed from Mother's care since 10/30/15, which is more than 12 months; Mother suffers from depression and anxiety; testimony from OCY witnesses showed Mother failed to complete treatment programs or cooperate with OCY staff and services; Mother has problems with drug use, tested positive for drugs on some occasions, and refused drug testing on other occasions; Mother's drug use, as well as her incarceration, made it impossible for her to provide proper parental care and support necessary for Children's physical and mental wellbeing; Mother's drug use was condition that led to Children's placement, and Mother has not demonstrated she can remedy that condition within reasonable period of time; it is unfair for Children to be forced to wait for Mother to become capable of parenting them; under Section 2511(a)(2), OCY showed evidence of Mother's neglect of Children; Mother justified her actions due to "addict thinking"; Mother is

incapable of performing basic parental duties; under Section 2511(b), there is minimal parental bond between Mother and Children; out of 35 visits offered with Children, Mother attended only 15; youngest child refers to foster mother as his mother; Children need more than Mother's love and affection; Mother has not been able to provide for Children's needs; Children's best interests will be met by termination of Mother's parental rights; Children are bonded to foster parents). Accordingly, we affirm on the basis of the Orphans' Court opinion.

Orders affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/24/2017

THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

**IN RE: ADOPTION OF H.D.L**
ORPHANS' CT. NUMBER: 2016-A0182

**IN RE: ADOPTION OF A.H.L.**
ORPHANS' CT. NUMBER: 2016-A0183

**IN RE: ADOPTION OF K.N.L.**
ORPHANS' CT. NUMBER: 2016-A0184

**IN RE: ADOPTION OF O.R.L.**
ORPHANS' CT. NUMBER: 2016-A0185

## PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a) OPINION

**AND NOW,** this 16th day of March, 2017, following the Notice of Appeal filed on behalf

of birth mother on March 1, 2017 and the Notice of Appeal filed on behalf of birth father on

February 28, 2017, this Court's reasoning as to the entry of the Orders appealed from can be

found in the transcript of February 2, 2017, at pages 129-150, copies of which are attached.

BY THE COURT:

CHERYL L. AUSTIN, J.

Copy of the above _E-Filed 3/16/17_ to:
Nathan J. Schadler, Esquire (3245 Ridge Pike, Eagleville, PA, 19403), Attorney for birth mother
Joseph Hyland, Esquire, Attorney for birth father
Christina Terebelo, Esquire (OCY)
Dana Greenspan, Esquire, Guardian ad litem

Secretary

129

OPINION

AUSTIN, J.

For the record, the following explanation and decision is my Opinion in this matter. And this verbal statement, on the record, is designed to satisfy Pennsylvania Rule of Appellate Procedure 1925(a).

The appeal rights of all parties hereto will certainly be explained to all of the parties by their respective counsel. Allow me at this time to remind all counsel that exceptions in this matter, and matters of this type, were abolished and any appeal is a direct appeal within 30 days directly to the Superior Court.

Now, the Office of Children and Youth, I am going to refer to them as "OCY," has filed a petition to terminate the parental rights of Birth Mother C.G., and Birth Father J.L. to their children: K.N.L. -- I am probably mispronouncing her name -- but her date of birth, September 2004; O.R.L. her date of birth is April 2008; A.H.L. whose date of birth is January 2010; and H.D.L who's date of birth is October 2013.

The petition that we are here

Case# 2016-A0182-1.3.1.2 Received at Montgomery County Register of Wills Office on 03/16/2017 11:33 AM, Fee = $0.00

- *OPINION* 130

addressing, at this time, was filed on November the 14, 2016 and alleges the following grounds as a basis for terminating parental rights: Initially it was 2511(a)(1). This Court grants the OCY motion to withdraw their pursuit of (a)(1). Instead this hearing will focus on 2511(a)(2) and 2511(a)(8) of the Adoption Act. If any one of these grounds is established and proven by clear and convincing evidence, then the termination of rights will occur.

Now, OCY has to prove its case by clear and convincing evidence. As you know, the standard of clear and convincing evidence is a threshold determination and was established by the U.S. Supreme Court in the case of *Santosky v. Kramer*. That is cited at 455 U.S. 745. It's a 1982 case.

This standard of clear and convincing evidence is defined as testimony that is so direct, weighty, and convincing and clear as to enable me as the fact finder to come to a clear conviction without any hesitancy of the truth of the precise facts at issue. It's not necessary that that evidence be uncontradicted, provided that it carries conviction to the mind, or carries a clear conviction of the truth. And that is from the Pennsylvania case of LaRocca Trust

Case# 2016-A0182-1.3.1.2 Received at Montgomery County Register of Wills Office on 03/16/2017 11:55 AM, Fee = $0.00

- *OPINION* 131

192 A.2d 409, and that's a 1963 case.

So, the sections being pursued here involve (a)(2). Under section (a)(2) I have to consider whether OCY has proven abuse or neglect by clear and convincing evidence, or I have to determine whether OCY has proved the incapacity of the Parent.

In this case -- and I think all parties will agree -- there's been no proof of abuse of the children. So, I have to evaluate whether OCY has proved by clear and convincing evidence that the Parents lacks the capacity to parent the children, and to provide the minimum requirements to which all children are entitled.

I would state under that, that the Court did receive evidence of neglect, and I will address that a little later here also.

Under (a)(8), 2511(a)(8) the test is the child has been removed from the care of the Parent by the Court, or under a voluntary agreement with an agency, 12 months or more have elapsed from date of removal or placement, the conditions which led to the removal or placement of a child continue to exist, and termination of parental rights would best serve the needs and welfare of the child.

Case# 2016-A0182-1.3.1.2 Received at Montgomery County Register of Wills Office on 03/16/2017 11:33 AM, Fee = $0.00

– *OPINION* 132

I am going to address (a)(8). With respect to alleged grounds under section (a)(8) the children have been removed from the care of the parent from October 30th, 2015 until today, and they are still in foster care. That's a period of 15 months. Also this Court received evidence that the children were also in care of OCY during the 2013/2014 time period. But let me address 2511(a)(8).

The time periods being satisfied that of 15 months, there's a threshold of one year, and in this case 15 months have elapsed, the most recent time period. So, now that that has been satisfied, the principle questions that I need to answer are:

One, whether the conditions that led to the removal of the children from the home, whether they continue to exist as of the time the petition was filed, which was in November. And, two, whether the Parents can or will remedy the conditions within a reasonable time. And then, finally, whether terminating the Parents' parental rights will best serve the needs and the welfare of the children.

Interpreting this statute, the Pennsylvania Superior Court has identified certain irreducible minimum requirements that all children are

entitled to from their parents. That includes adequate housing, adequate clothing, adequate food, love, and supervision. The necessary implication in that a parent who cannot or will not meet these irreducible minimum requirements, that have been set by the Pennsylvania Juvenile Act, within a reasonable time following State intervention -- which in this case is OCY -- may properly have their rights terminated.

Now, two cases support those twos statements that I just made. The first is *In Re: Diaz* 669 A.2d 372. That's a Pennsylvania Superior Court case from 1995. The second is a Pennsylvania Superior Court 1990 case, *In Re: J.W., A.W., V.W., and J.W.* And that is cited at 578 A.2d 952 and 958. So, the grounds for terminating parental rights may consist of a lack of capacity and not just affirmative misconduct.

I am going to first address the issue of this Court's consideration when the parent has mental disability. This Court heard testimony that both parents have mental disabilities. The Birth Father stated that he has ADD and anxiety issues, and Birth Mother, through the assessment of her as needing a dual diagnosis treatment, testified that she suffers from depression and anxiety, as well as -- she just said

Case# 2016-A0182-1.3.1.2 Received at Montgomery County Register of Wills Office on 03/16/2017 11:33 AM, Fee = $0.00

— *OPINION*     134

that there were mental health issues there that needed to be addressed.

The Pennsylvania Supreme Court has held that it is not a violation of constitutional rights for an individual's parental rights to be terminated due to a parent's mental disabilities or handicaps that prevent the parent from being able to properly care for the child.

As the Supreme Court explained, when it reached its decision in this case, which is cited at 383 A.2d 1239, "a decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity."

The legislature, however, in enacting the Adoption Act concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform those duties.

The Pennsylvania Superior Court has also held that a mental impairment for disability doesn't require that OCY needs additional burdens or a higher standard in order to justify the court's termination of

Case# 2016-A0182-1.3.1.2 Received at Montgomery County Register of Wills Office on 03/16/2017 11:33 AM, Fee = $0.00

— *OPINION* 135

a parent's rights to his or her child. There is a duty that's placed on the parent to work with OCY and receive services in order to learn necessary parenting skills. There's that duty that comes from the case *In Re: Adoption of J.J.* That's a 1986 Pennsylvania Superior Court case cited at 515 A.2d 883.

Now, in upholding the decision of the lower court where the court terminated the parental rights of a mother who suffered from limit intelligence, depression, and chronic mental illness, the Superior Court noted that the natural mother had not been able to sustain herself in an independent living facility, and also had not been able to achieve the family service plan goals that would permit reunification with her family.

She could not assume the role of parent and had not exercised that role, except for limited visits, and is presently and for the foreseeable future incapable of fulfilling the role of mother and caretaker for her child.

Again, those words were taken from the case of *In Re: Adoption of J.J.*, that is at 338 and 331.

So, despite a parent's wishes, despite a

Case# 2016-A0182-1.3.1.2 Received at Montgomery County Register of Wills Office on 03/16/2017 11:55 AM, Fee = $0.00

– *OPINION* 136

parent's desire to preserve that parental bond or role in cases where the parent is incapable of providing those basic necessities, and will continue to suffer such parental incapacity, the focus of this Court must be not on the parent's wishes, or their desires, or their attempts, but the child's need for security, for safety, for stability, for permanency, and their wellbeing. That is taken directly from the Adoption and Safe Families Act.

"The child's safety is the paramount concern. Substitute care is only a temporary setting, it's not a place for children to grow up in." That is also taken from the Adoption and Safe Families Act.

As it relates to the issue of incapacity -- again, I am going to cite Birth Mother's testimony about her dual diagnosis. Also I received evidence over the two days of this hearing, lots of evidence, regarding her failure to complete any program, any program, her failure to cooperate with the staff at OCY, or any of the services that were provided by the OCY.

I mean it's almost like you're being given a refrigerator, a stove, cabinets full of food, and you don't eat because its somebody else's fault.

Case# 2016-A0182-1.3.1.2 Received at Montgomery County Register of Wills Office on 03/16/2017 11:33 AM, Fee = $0.00

*J : - OPINION* 137

Everything is there.  Everything is being given to you. All you have to do is cooperate.

Now, there's been evidence -- I am going to now discuss the issue of parental drug use, because as Counsel has stated Birth Mother has drug use issues and although he's very -- I got the impression from the testimony that there's not that admission, I would say that Birth Father has drug issues as well.  So I am going to address that.  The evidence of drug testing with the Petitioner reveals positive tests, that is evidenced by OCY Exhibit No. 9.  There are also a number of refusals listed in that exhibit.

The Birth Father testified that he was pretty compliant with the tests, and he testified less than credibly, however, about his own drug use.  He denied the use of heroin, yet told the adult probation officer that he used heroin.  So, it's like that ad that you see for the show "Law and Order," you know, were you lying then, or were you not lying now?  It's just a credibility issue that comes up with that. Birth Father in his testimony did not admit to an addiction like Birth Mother did, noting that he had just suffers from ADD and anxiety.

Birth Mother and Birth Father's

*OPINION*                                138

continued drug use, and the resulting incarceration, make it impossible for them to provide the parental care, control, housing, nutrition, comfort and support that's necessary for these children's physical and mental wellbeing.

I find that the Petitioner has presented clear and convincing evidence that the Birth Parents' drug use creates a parental incapacity and has resulted in the neglect of parental duties and an inability to provide a safe and secure home for the children. Moreover, this drug use is a condition that led to the removal of the children from the Parent's home in the first place. And I find that OCY has demonstrated that this cannot and will not be remedied by the Birth Parents within a reasonable period of time.

I commend Birth Mother's plans, her goals of finishing up the program that she's in, and then going to a halfway house, but I don't know when that's going to -- it's not fair to the children to wait. It just really isn't fair. And despite his third violation Birth Father seems intent on violating the conditions of his probation and parole regardless of the impact that it has on his children.

Given the length of time that these

- *OPINION*                    139

children have been placed in foster care, OCY has demonstrated, that the conditions that led to the removal of the children from the home cannot or will not be remedied within a reasonable time.

I am going to talk about Birth Father's incarceration, and to a certain extent Birth Mother's incarceration because she's been in jail during the time period this Court has received evidence of her incarceration as well.

Specifically the Pennsylvania Supreme Court has on several occasions considered the relevance of incarceration to a petition for termination of parental rights under section (a)(2) of the Adoption Act. The Pennsylvania Supreme Court in its plurality decision in the case *In Re: R.I.S.* stated that the incarceration of a parent standing alone can't constitute proper grounds for the termination of a parents' rights to his or her child. And that case is cited at 36 A.3d at 574.

However, there was a concurring opinion of that case that made clear that incarceration can be a factor in this Court's decision to terminate parental rights. Thereafter, in another case *In Re: Adoption S.P.,* that's cited at 47 A.3d at 828, the

Case# 2016-A0182-1.3.1.2 Received at Montgomery County Register of Wills Office on 03/16/2017 11:33 AM, Fee = $0.00

*- OPINION*                                         140

Superior Court reiterated that the parent has an affirmative duty to love, protect, and support a child, or their children, and to make an effort to maintain communication and association with the children.

Also, in the case that I cited earlier, *In Re Adoption S.P.*, our Supreme Court revisited its decision in *In Re R.I.S.*, and stated with respect to any OCY petition under section (a)(2), about parental incapacity, "we now definitively hope that incarceration, while not a litmus test for determination can be determinative of the question of whether a parent is incapable of providing essential parental care, control, or subsistence, and the length of this remaining confinement can be considered as highly relevant to whether the conditions and causes of the incapacity, abuse, or neglect, or refusal cannot or will not be remedied by the parent."

So, as the Supreme Court definitively ruled in *In Re Adoption of S.P.*, this Court may consider the effect of the Parents' incarceration in addressing the evidence offered to support a petition to terminate the Parents' parental rights.

This Court must also consider whether even when not incarcerated the Parents have provided or

Case# 2016-A0182-1.3.1.2 Received at Montgomery County Register of Wills Office on 03/16/2017 11:33 AM, Fee = $0.00

— *OPINION*                         141

failed to provide the children with essential parental care, control, or subsistence that is necessary for their physical and mental wellbeing.

Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. And that's cited from the case *In Re A.L.D.*, 797 A.2d 326. It's a Pennsylvania Superior Court case. And essentially what that means is you got to cooperate. You have to work with people. That just shows how much you want your children.

So, from that same case, the court has stated a parent's vow to cooperate after a long period of uncooperativeness, regarding the necessity or the availability of services may properly be rejected as untimely, or disingenuous. That's what I am doing. You know, whenever you all get around to it. I've heard testimony from both Parents that they now see the light, and they are with willing to work with OCY. I am rejecting that, because it's too late. And as far as this Court is concerned, it is untimely, and in many respects it's disingenuous. Thus, a trial court may properly refuse to consider a parent's indication that he or she wishes an opportunity to improve their

Case# 2016-A0182-1.3.1.2 Received at Montgomery County Register of Wills Office on 05/16/2017 11:53 AM, Fee = $0.00

- *OPINION*                                    142

parenting in the future.

So, finally, the last factor is about the incapacity. I touched on it a little bit, I am just going to cite the case of *In Re: Adoption of J.J.* It's a 1986 Pennsylvania Superior Court case, cited at 511 (Pa.) 590.

The Pennsylvania Supreme Court in discussing incapacity has stated that a decision to terminate parental rights is never to be made lightly or without a sense of compassion for the parent can seldom be more difficult than when termination is based upon parental incapacity. I think I already cited that one as well.

Since we are not going under (a)(1) I am going to move forward to (a)(2).

(A)(2) usually focuses on incapacity. As I mentioned earlier, this Court received testimony regarding the neglect of the children, so I will address that first.

This Court received evidence that the children were neglected in numerous situations. And that's what brought OCY into the family's picture. I listened to the Parents' reasoning, or their explanation, for their conduct and Birth Mother used

Case# 2016-A0182-1.3.1.2 Received at Montgomery County Register of Wills Office on 03/16/2017 11:33 AM, Fee = $0.00

*- OPINION* 143

the term "addict thinking." And I think that's very forthright; however, I also heard in listening very carefully to Birth Mother that everything else seemed to be OCY's fault. Likewise, with Birth Father, there was an excuse for everything.

This Court finds that the facts given to me today indicate to me by clear and convincing evidence, as it relates to each child in this case, that Birth Mother and Birth Father are not capable of performing minimal parental duties.

This Court finds that OCY has met its burden of proof under (a)(2), and section (a)(8), by clear and convincing evidence.

I am going to talk next about the needs and the welfare of the children. The focus in considering a petition to terminate parental rights under 2511(a) is on the Parents. And I have just spent the last 20 minutes now talking about the Parents and the testimony that I received about the Parents.

Under Section 2511(b) the focus is on the child. Our Supreme Court in 2013 stated as follows: If the grounds for termination under subsection (a) are met, a court shall give primary consideration to the developmental, physical, and

— *OPINION*                144

emotional needs and welfare of the child. The emotional needs and welfare of the child have been properly interpreted to include intangibles such as love, comfort, security, and stability. And that is from the case of *In Re: K.M.*, cited at 53 A.3d 781, 2012 case, as well in the case *In Re: E.M.*, that's cited at 620 A.2d 481. This court held that the termination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond.

Section (b) of the statute requires the court to give primary consideration to the developmental, physical, and emotional needs and welfare of the child. And I am going to cite two other cases here for that -- well, one case, *In Re: T.S.M.*, at 71 A.3d 251. And that is a 2013 Superior Court case.

So the Superior Court in their interpretation of the Pennsylvania Adoption Act holds that the health and safety of the children supersede all other consideration. That means that that's what's most important here.

Case# 2016-A0182-1.3.1.2 Received at Montgomery County Register of Wills Office on 03/16/2017 11:53 AM, Fee = $0.00

- *OPINION*                                    145

In considering the child's needs and welfare, a court has to consider the role of the parental bond in a child's life. I am required by prior case law to fully consider whether a parental bond exist to such an extent that cutting that bond would be contrary or harmful to the needs and the welfare of the children.

The Pennsylvania Supreme Court has observed the delicate balance between preserving that family unit and preventing a state of constant uncertainty and limbo for a child who has no reasonable prospect for returning home to the care of his or her natural parents.

In the case of *In Re: William L.*, cited 383 A.2d 1228, a 1978 case, our Supreme Court has observed that "whereas here disruption of the family has already occurred and there is no reasonable prospect for reuniting the family without serious emotional harm to the child, the issue is not whether the state should intrude to disrupt an ongoing family relationship but whether the state should seek to preserve, in law, a relationship that no longer exists in fact with the result that the child is consigned indefinitely to the limbo of foster care, or the

- *OPINION*                                    146

impersonal care of institutions."

In this case the testimony clearly established that although there's affection and each Parent cares for and plays with the children, the Birth Parents hadn't maintained sufficient and consistent contact and there is minimal parental bond between the children and either Birth Parent.

I received testimony regarding the number of visits, and of the visits Father received nine visits -- there were 35, I believe, visits offered total. Mother attended 15, Father received nine, all in jail. There were opportunities there.

I received testimony regarding the quality of the Parents' interaction but what really struck me was Birth Mother's testimony that her youngest son asked for his mother in referring to the foster mother, and I know that had to hurt but that displayed to me, or showed me that the bond there is minimal if even the youngest child refers to the foster mom as his mother.

The other children I heard testimony about their interactions at the visits. I heard that the visits with Birth Father, Birth Father was considered more of a playmate than a parental figure.

Case# 2016-A0182-1.3.1.2 Received at Montgomery County Register of Wills Office on 03/16/2017 11:33 AM, Fee = $0.00

- *OPINION*                    147

And while I could tell from the testimony of both Parents, that both Parents care and have love for the children, they have been there clearly all of their lives, the children still need more in accordance with the requirements of the Pennsylvania Adoption Act.

In this case, Birth Parents have not provided a home, haven't met the children's needs, and have not maintained a consistent and strong parent/child relationship. The Parents' desire for one more try, the Parents' desire to start over at this time is insufficient to meet the children's needs for consistent and reliable love and affection and responsibility, because that is what children are.

I conclude that the emotional needs and welfare of the children can best be met by termination of the parental rights of both Parents, and that the children will not suffer a detriment as a result of termination of the parental rights of both Parents.

In this case I find that the parental bond between Birth Mother and each child is minimal. I also find that the parental bond between the Birth Father and each child is minimal. By contrast I find that the bond has developed between the foster parents and the children that has been described as warm and

- *OPINION*                     148

nurturing from the testimony of the caseworker.

Therefore, I find from the evidence and testimony that termination of Birth Mother and Birth Father's rights best serves the needs and the welfare of each of these children, and termination of the parental rights of Birth Mother and Birth Father will not irrevocably harm any of the children.

Before I conclude, I want to say I don't know if it's a part of that addict thinking or all a part of the manipulation, but I want to say that I was moved by Mother's testimony. Mother testified that there is a reason for everything, and everything happens for a reason. She quite plainly and correctly stated that: I have to be right for them. And I am not right yet. But the most telling statement to me was: They will come looking for me one day and I need to be right for them.

That is so true. So regardless of what happens today -- and this applies to Birth Father as well, they are going to come looking for you one day. And now is the time to get it together. If you ever want to have a relationship with them, even as an adult, at the rate you are going, you may not even be there; but, if you are going to be alive at that time,

Case# 2016-A0182-1.3.1.2 Received at Montgomery County Register of Wills Office on 03/16/2017 11:33 AM, Fee = $0.00

- OPINION                    149

you need to be sober, you need to be productive, you need to be parents that they can be proud of, that they can show off, that they can tell their friends:  This is my mom; this is my dad.  Now, is the time to work on that, because they will come looking for you.  They will.  I just hope you give them something worth looking for.

On this day, based upon the facts presented, and the law, I must enter a final decree terminating the parental right of Birth Mother, C.G. and Birth Father, J.L., to each of the children involved in this petition:  K.N.L., O.R.L., A.H.L., and H.D.L.

Let me remind you that you have 30 days from today to appeal to the Superior Court of Pennsylvania.  If you fail to do so, you will lose any right to appeal.

Has the petition requesting a change of permanency goal been filed with the clerk of the Juvenile Court for consideration at this time?

MS. TEREBELO:  Yes, Your Honor.  And we would ask you to rule on that request at this time.  I do have proposed permanency review orders for the goal change, if I may approach.

Case# 2016-A0182-1.3.1.2 Received at Montgomery County Register of Wills Office on 03/16/2017 11:33 AM, Fee = $0.00

150

THE COURT: All right.

MS. TEREBELO: If I may approach.

— — —

(Handing.)

— — —

THE COURT: Thank you.

Before we adjourn, let me ask Counsel is there anything else I need to address with regard to this matter today?

MS. TEREBELO: No, Your Honor.

MR. HYLAN: No, Your Honor.

MR. SCHADLER: Not at this time, Your Honor.

MS. GREENSPAN: No, Your Honor.

THE COURT: This matter is concluded.

— — —

(At 3:43 p.m., proceedings were concluded.)

— — —

151

C E R T I F I C A T E

I hereby certify that the proceedings and evidence are contained fully and accurately in the notes taken by me in the above cause and that this is a correct transcription of the same.

Lisa Claud Neal, RPR

Case# 2016-A0182-1.3.1.2 Received at Montgomery County Register of Wills Office on 03/16/2017 11:33 AM, Fee = $0.00